UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL SCHNEIDER, MATT FARLEY and DENICE BASQUES<br><br>Plaintiffs,<br>v.<br><br>CITY OF PACIFICA, a municipality, TED W. MERRITT, individually and in his capacity as a police officer for the CITY OF PACIFICA, WILLIAM GLASGO, individually and in his capacity as a police officer for the CITY OF PACIFICA, DAVE BERTINI, individually and in his capacity as a police officer for the CITY OF PACIFICA, and DOES 1 to 25, inclusive<br><br>Defendants.<br>_____/ | No. C04-1381 MHP<br><br>**MEMORANDUM AND ORDER**<br>Re: Defendants' Motion For Partial Summary Judgment |

Plaintiffs April Schneider, Matt Farley, and Denice Basques have brought the present action alleging that defendants violated their federal and state civil rights. On February 24, 2003, defendant William Glasgo, a City of Pacifica police officer, rear-ended plaintiff April Schneider's vehicle with his patrol car while attempting to conduct a vehicular stop. Plaintiffs allege that the collision caused Schneider personal injuries and that the incident, as well as a subsequent event, violated all three plaintiffs' state and federal civil rights. Now before the court is defendants' motion for partial summary judgment on plaintiffs'

state and federal civil rights claims for excessive use of force, unlawful detention/false arrest, and intimidation. Having considered the arguments and submissions of the parties, and for the reasons set forth below, the court rules as follows.

BACKGROUND

On February 24, 2003, William Glasgo, a City of Pacifica police officer, spotted a small off-white car speeding down a local highway. Glasgo Dep. at 37:3-38:15, 39:19-24. At the time, April Schneider was driving with passenger Denise Basques in a small white car down the same highway. Schneider Dep. at 57:16-59:1. Separated from Schneider by an SUV driven by Matt Farley, Schneider's husband, Glasgo began to follow in order to issue Schneider a citation. Glasgo Dep. at 40:20-41:10. Glasgo followed the two vehicles into a restaurant parking lot, where Schneider, traveling between three and five miles per hour, pulled into a parking space. Basques Dep. at 42:22-24; Glasgo Dep. at 52:23-25, 53:1-3, 55:6-8; Schneider Dep. at 61:14-17.

Glasgo activated his patrol car's emergency lights as he entered the parking lot, automatically prompting his car's video camera to begin recording through the windshield. Glasgo Dep. at 32:14-22; Farley Dep. at 25:15-26:5. After seeing the patrol car's lights, Farley pulled his SUV over to the right, thereby blocking Glasgo's line of sight to Schneider's car. Farley Dep. at 26:16-27:19; Glasgo Dep. at 53:6-14. Glasgo did not know at this time and until after the accident that Farley was Schneider's husband. Glasgo accelerated and swerved his patrol car to the left, then made a sharp right hand turn and collided with Schneider's rear bumper. Farley Dep. at 26:16-27:19; Glasgo Dep. at 53:14-17. At the time of impact, Glasgo's car was traveling at a rate of between five and ten miles per hour. Basques Dep. at 46:19-21; Glasgo Dep. at 56:8-10. The impact from the collision pushed Schneider's vehicle onto the parking curb and Schneider's head hit the steering wheel. See Schneider Dep. at 61:23-24, 64:9-23; Glasgo Dep. at 56:15-23.

The California Highway Patrol was called to the scene to investigate the collision. Bertini Dep. at 27:4-14, 47:17-21; Schneider Dep. at 82:5-9, 83:5-9. Paramedics checked Schneider for injuries. Schneider Dep. at 84:22-85:8. All three plaintiffs were kept at the scene for approximately sixty to ninety minutes and subject to instructions that they remain inside their vehicles. Schneider Dep. at 122:12-18,

110:7-8, 22-23; Glasgo Videotape, Ex. A, Morrison Decl.  Glasgo failed to turn on his audio microphone to record his interactions with Schneider, Basques, and Farley, as required by police policy.  See Glasgo Dep. at 35:1-21; Bertini Dep. at 36:18-37:4.

Two days after the collision, on February 26, 2003, Farley was driving in his SUV on a street in Pacifica.  Farley Dep. at 50:7-23.  A Pacifica Police Department patrol car began following his vehicle, approximately five feet from his rear bumper, at a rate of thirty to forty miles per hour.  Farley Dep. at 52:9-12.  Farley could not positively identify the officer driving, but believed it to be Glasgo.  Farley Dep. at 53:3-6.  The patrol car continued to follow Farley's vehicle at a close distance for one-half mile before turning.  Farley Dep. at 53:8-11.  Glasgo was on duty and operating a patrol car that day.  Thornton Supp. Dec., Exh. D.

Pursuant to 42 U.S.C. section 1983 and California Civil Code section 52.1, plaintiffs allege three violations of their state and federal civil rights: excessive use of force, unlawful detention/false arrest, and intimidation.  See First Am. Compl. at ¶¶ 34-49, 60-65.  In addition, they allege causes of action under California common law, including false arrest and imprisonment, negligence, negligent and intentional infliction of emotional distress, and negligence in hiring, retention, and supervision.  See id. ¶¶ 49-58, 65-72.  Defendants have moved for partial summary judgment on all of plaintiffs' causes of action except their negligence and negligent hiring/supervision claims.  Defs.' Not. of Mot. for Summ. Judg. at 1-2.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's

1   case ." Id.

2   Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. See Anderson, 477 U.S. at 249; Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991). Even if summary adjudication of an entire claim is not warranted, Federal Rule of Civil Procedure 56(d) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial. Fed. R. Civ. Pro. 56(d); State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (Patel, J.).

## DISCUSSION

Defendants move for partial summary judgment, arguing that the facts alleged and proven in the present action do not give rise to claims of excessive use of force, unlawful detention/false arrest, or intimidation in violation of any of plaintiffs' state or federal civil rights. See Defs.' Mot. at 1-3. In addition, they have moved for summary judgment on several of plaintiffs' claims arising under California common law.

### I.    Plaintiff's 42 U.S.C. Section 1983 and California Civil Code Section 52.1 Claims

Plaintiffs have alleged violations of their state and federal civil rights, bringing the present action pursuant to 42 U.S.C. section 1983 as well as California Civil Code section 52.1. The court will treat these claims concurrently, as plaintiffs' allegations in each cause of action encompass similar conduct, namely: excessive use of force, unlawful detention and/or false arrest, and intimidation.

Plaintiffs' first amended complaint brings three causes of action pursuant to section 1983. The complaint alleges violation of plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments by individual defendants, as well as violations of plaintiffs' constitutional rights pursuant to customs and/or policies of the City of Pacifica which its high ranking police supervisors knew of or were indifferent to. First

Am. Compl. ¶¶ 34-49.  In order to state a claim for deprivation of rights under section 1983, plaintiffs must show that (1) the plaintiff possessed a constitutional right of which she was deprived, (2) the acts or omissions of the defendant were intentional, (3) the defendants acted under color of law; and (4) the acts or omissions of the defendant caused the constitutional deprivation.  Estate of Macias v. Idhe, 219 F.3d 1018, 1027 (9th Cir. 2000).  The purpose of section 1983 is to impose liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.  Baker v. McCollan, 443 U.S. 137, 146 (1979).

Plaintiffs' cause of action pursuant to California Civil Code section 52.1 includes two allegations: Schneider's allegation of excessive use of force and Farley's allegation of threats and intimidation. California Civil Code section 52.1, subdivision (b), provides that if any person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the state or federal constitutional or statutory rights of any individual, the individual may bring a civil action for equitable or injunctive relief.  See Cal. Civ. Code § 52.1(b).  Section 52.1 applies to affected plaintiffs without regard to their membership in a protected class, and no showing of discriminatory animus is required.  Venegas v. County of Los Angeles, 11 Cal. Rptr. 3d 692, 706 (Cal. 2004).  The statute "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interfere with a constitutional or statutory right."  Id. at 707.

### A.     Excessive Use of Force

Plaintiff Schneider alleges that Glasgo intentionally rammed into her car on February 24, 2003, thereby using excessive force in violation of Schneider's rights under the Fourth and Fourteenth Amendments.  See generally First Am. Compl. at ¶¶ 1-35.  To establish an excessive force claim, plaintiffs must show that she was subjected to an unreasonable seizure within the meaning of the Fourth Amendment, and that Glasgo, an officer acting under color of law, intentionally caused this seizure.  See Smith v. City of Hemet, 394 F.3d 689, 700 (9th Cir. 2005).

A seizure is a "governmental termination of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989).  As the Court noted in Brower, if a police car pulls alongside a fleeing vehicle and sideswipes it, producing a crash, the termination of the suspect's freedom of

movement would be a seizure. Id. See also Harris v. Coweta County, No. 03-1094, 2005 U.S. Lexis 6721 (11th Cir. Apr. 20, 2005) (finding that pursuant to Brower, using a vehicle to stop and apprehend a suspect is a seizure). To determine whether the force used in a particular seizure is "reasonable" under the Fourth Amendment, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotations omitted). The proper application of the test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight. Id. at 396, citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . .seizure")

The requirement that a state actor behaved intentionally is at the heart of any showing of section 1983 liability for a Fourth Amendment violation. See Brower, 489 U.S. at 597; Idhe, 219 F.3d at 1027. Plaintiff Schneider argues that Glasgo intentionally hit Schneider's vehicle because he was attempting to prevent her from driving away before he issued a traffic citation. In support of this theory, plaintiff offers the following facts from the record: Schneider's car was securely parked at the time of the collision, Schneider Dep. at 61:16-19; after the collision, Glasgo told Basques that he hit plaintiff in the course of preventing a "getaway," Basques Dep. at 51:1-16; and Glasgo testified that he made a sharp right turn around the SUV in order to prevent Schneider from driving away, Glasgo Dep. at 87:1-89:4.

Plaintiff Schneider conflates Glasgo's volitional driving maneuvers and his intent to catch up to her car with an intent to hit her vehicle. The court's review of the videotape evidence capturing images from the incident leads to the inescapable conclusion that Glasgo did not intend to hit Schneider's vehicle. The videotape records the fact that Glasgo had depressed his brake pedal in the instants prior to the collision, leading to the reasonable inference that Glasgo attempted to avoid the collision. See Glasgo Videotape, Ex. A, Morrison Decl. Though Glasgo's comments regarding preventing a "getaway" and his driving maneuvers indeed paint a picture of Glasgo as an overheated officer and incompetent driver with a slow reaction time, they do not bridge the logical gap between intending to keep a close trail on Schneider and intending to hit her vehicle. See  Basques Dep. at 51:1-16; Glasgo Dep. at 87:1-89:4. Though Glasgo

may have been driving aggressively and negligently, no reasonable jury could find that Glasgo's actions exhibited an intent to ram Schneider's parked vehicle into the curb to bar her escape from a speeding ticket.

Other undisputed facts in the record support the inference that Glasgo's actions were negligent rather than intentional. Glasgo utterly lacked a motive to collide with Schneider—in fact the incident led to his discipline and ridicule at work. See Glasgo Dep. at 64:2-11, 69:15-20, 71:8-17. In addition, the fact that Glasgo's line of sight was compromised by Farley's SUV supports the reasonable inference that Glasgo could not see whether Schneider had pulled onto a roadway or into a parking space. While the facts in the present action would certainly support a reasonable finding of negligence, mere negligence alone is insufficient to give rise to liability under section 1983. See Daniels v. Williams, 474 U.S. 327, 331 (1986). Defendants are therefore entitled to summary judgment on plaintiff's section 1983 cause of action for excessive use of force.

Similarly, section 52.1 is not a mechanism of redress in tort cases, because the statute only reaches interference with constitutional rights through threats and intimidation. See Venegas, 11 Cal. Rptr. 3d at 706. In the absence of a showing of intent to hit her car, plaintiff has not shown an unreasonable seizure in violation of her constitutional rights and therefore, defendants are also entitled to summary judgment on Schneider's section 52.1 claim. Summary judgment is granted as to plaintiff Schneider's excessive use of force claims.

### B. Unlawful Detention/False Arrest

Plaintiffs contend that Glasgo and Bertini unlawfully detained them by stopping Schneider's vehicle without objective justification, asserting their authority as police officers over Farley and Schneider, and requiring Farley, Schneider, and Basques to remain at the scene of the incident for as long as an hour and a half. See Pls.' Opp'n. at 13-15. Plaintiffs allege that these unlawful detentions violated their right to be free from unreasonable searches and seizures under the Fourth, Fifth and Fourteenth Amendments to the Constitution and their rights under California Civil Code section 52.1. Id. Defendants argue that these events cannot give rise to unlawful detention as a matter of law, because the detentions were made pursuant to the California Vehicle Code. See Defs.' Rep. at 6-7; Defs.' Mot. at 14-15.

A police officer may stop and briefly detain a person for investigative purposes if they have reasonable suspicion supported by articulable facts that criminal activity "may be afoot" or that the person is a suspect to a completed crime. Terry v. Ohio, 392 U.S. 1, 30 (1968). The propriety of the length of an investigatory stop depends on the circumstances of each case and turns on whether the officer diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. United States v. Sharpe, 470 U.S. 675, 686 (1985).

The facts of the instant case are insufficient to give rise to an unlawful detention claim under section 1983. As to the plaintiff's first argument, Glasgo's stop of Schneider's car—including his show of authority by using his emergency lights—indeed constituted an investigatory stop. However, Glasgo's actions were entirely reasonable under the Terry standard, because Glasgo had an objectively reasonable suspicion to believe that the off-white Mitsubishi with dealer plates he had seen speeding down the highway was Schneider's brand-new, white Mitsubishi which did, indeed, bear dealer plates. See Glasgo Dep. 38:9-15, Basques Dep. at 37:20-24. Based on the facts in the facts in the record, the court finds itself shocked to even discuss whether such trivialities might constitute section 1983 or section 52.1 violations.

Glasgo and Bertini's actions following the accident were reasonable as well. As defendants noted in their motion, California Vehicle Code section 20003 requires that all drivers involved in an accident resulting in injury or death provide their driver's license and other necessary information to any police officer at the scene of the accident. See Cal. Veh. Code § 20003. In the context of an injury collision for which paramedics were called, this provision made Farley's initial detention and surrender of identification reasonable. As for Schneider, as the injured driver, and Basques, an uninjured passenger, the vehicle code did not per se require them to remain at the scene. See Cal. Veh. Code § 20001, 20003.

However, the mere fact that Glasgo and Bertini used their authority as officers to request Schneider's driver's license, registration, and insurance and then required her to stay throughout the length of the ensuing investigation does not per se amount to an unlawful detention. Nor does the length of the investigation by Glasgo and the CHP and the related detention of all three plaintiffs necessarily rise to the level of a constitutional harm. Indeed, before Bertini arrived on the scene Schneider repeatedly asked for Glasgo's supervising officer. After Bertini arrived she insisted on seeing the Chief of the Department. While one can understand Schneider's frustration and anger at being hit by the police car, her repeated requests

8

and demands served to prolong the stop.

When examining a detention, courts must balance the nature and quality of the intrusion of the person against the importance of the governmental interests alleged to justify the intrusion. United States v. Hensley, 469 U.S. 221, 227 (1985). Plaintiffs emphasize several facts in the record to support their claim of an unconstitutional detention. First of all, except for her check up by paramedics, Schneider was told to remain in her car. Schneider Dep. at 110:12-22 (testifying that Bertini told Schneider to "get back in [her] car and stay put"). Basques and Farley were also asked to remain in or near their vehicles during the investigation. Farley Dep. at 35:24-36:1 (testifying that defendant Bertini asked him to "move over to [his] car and stay there"); Basques Dep. at 65:4-5 (testifying that the officer stated "[o]kay, you can get back in the car"). Farley was asked to stop taking pictures of the accident and return to his vehicle, but when he objected and told the California Highway Patrol officer that he was taking pictures of the accident scene and attending to his wife, the officers did not comment or interfere further. Farley Dep. at 35:20-36:14. Secondly, the California Highway Patrol officer on the scene retained Schneider's identification throughout the detention, and the position of Glasgo's car would have blocked Schneider's exit from the scene. See Basques Dep. at 71:23-72:1; Schneider Dep. at 111:9-10.

Though these facts demonstrate that Schneider, Basques, and Farley were indeed restrained from departing during the length of the investigation, a reasonable factfinder could not therefore conclude, without more, that the detention was unconstitutionally unreasonable. Applying the Hensley standard, the intrusion on the three plaintiffs was slight. They were not handcuffed or physically restrained in any way. They were simply asked to stay at the scene of the accident long enough for medical personnel to examine Schneider's condition and for the California Highway Patrol to arrive and investigate the accident. The length of time in question—estimated by Schneider to be an hour or an hour and a half—was not unconstitutionally unreasonable. See Schneider Dep. at 122:12-18. Delays were reasonably caused by summoning the California Highway Patrol, which was called in to avoid a conflict of interest stemming from a City of Pacifica investigation of one of its own officers. See Basques Dep. at 97:8-25. Once the California Highway Patrol came and completed the investigation, Schneider was told that she was free to leave. See Schneider Dep. at 103:11-13. The government interests in thoroughly investigating an accident involving a police officer were important enough to justify this slight intrusion.

9

In light of the aforementioned circumstances, no reasonable jury could find that the investigatory stop and the total length of time Schneider was required to stay at the scene of the incident were unreasonable. Thus plaintiffs' claim alleging unlawful detention/false arrest fails as a matter of law.

### C. Intimidation

Plaintiff Farley is suing defendants City of Pacifica, Merritt, Glasgo, and Bertini, alleging that because a police patrol car followed him closely while he was driving his SUV on February 26, 2003, he was subject to intimidation and retaliation in violation of his federal and state civil rights for his actions during incident one on February 24, 2003. See generally First Am. Compl. at ¶¶ 25-27, 34-35, 62. Farley has brought his allegations of intimidation pursuant to both section 1983 and section 52.1. Id. He alleges that Glasgo or another officer attempted to intimidate him in retaliation for his criticism of the police during the February 24, 2003 incident or for the purpose of preventing further criticism of the police. Id.

"[A]ny action to punish or deter such speech—such as stopping or hassling the speaker—is categorically prohibited by the Constitution." See Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990). The Ninth Circuit has used strong and unequivocal language in holding that police officers may not detain or harass persons in retaliation for a wide range of speech against an officer. Id.

At the scene of the accident, Farley expressed his displeasure at Glasgo, displayed a protective attitude towards Schneider, his wife, and possibly criticized Glasgo's driving skills. See Glasgo Dep. at 99:18-100:11. Glasgo, a newly minted officer, testified that at the scene of the accident, he felt concerned that he might be fired because of the collision. Id. at 58:24-59:4. Two days later, while Glasgo was on duty, Farley was followed at close range for one-half mile by a patrol car that he believed was driven by Glasgo. See Thornton Supp. Dec., Exh. D; Farley Dep. at 53:3-6. The record contains no further evidence of contact between the two men, or that the policeman trailing Farley was indeed Glasgo. Though it verges on inappropriate speculation to infer an intent to intimidate Farley on the basis of a few mild remarks at the scene of an accident and a brief tailgate, Farley is entitled to the inference as the non-moving party. See Anderson, 477 U.S. at 249. Given the temporal proximity of the incidents, the court holds that a factfinder could reasonably infer that Glasgo or another officer indeed tailgated Farley because of the accident.

10

Yet even accepting that inference in plaintiff's favor, the record does not suffice to state a violation of Farley's constitutional rights. In Duran, the Ninth Circuit considered an officer's arrest and physical injury of a plaintiff in response to the plaintiff's string of verbal insults and obscene gestures. Duran, 904 F.2d at 1373-75. The court found that the officer lacked any legitimate, articulate reason for stopping or detaining the plaintiff. Id. at 1377. In holding that the plaintiff had a First Amendment right to criticize the officer using such terms, the court used uncategorical language to convey that "criticism of the police is not a crime." Id. at 1377. The present action shares some attributes with Duran: Farley expressed displeasure with an officer and he was not engaged in any illegal conduct at the time of the tailgating. However there is a key distinction between the two cases: the officer driving the vehicle did not stop, detain, communicate with, or otherwise have any contact with plaintiff Farley. While a one-half mile tailgate by a patrol car might give any driver pause, there is nothing in this record to transform that single incident of tailgating into a threat that plaintiff should not exercise his First Amendment rights. Causation is too attenuated and the harm too minimal to constitute interference with Farley's constitutional right to challenge the police. Even were a jury to believe that Glasgo trailed Farley for one-half mile, the conduct simply cannot give rise to a claim of intimidation in violation of plaintiffs' state or federal civil rights under section 1983 or section 52.1.

Each of plaintiffs' section 1983 and section 52.1 claims therefore fails as a matter of law. The facts in the record are insufficient to prove use of excessive force, unlawful detention/false arrest, or intimidation by police officers. Plaintiffs have merely alleged and proven incidents sounding in tort law.

## II.     Plaintiffs' State Claims

Defendant has moved for summary judgment on several of plaintiffs' state-law based claims, including their plaintiffs' false arrest and imprisonment claim and Schneider and Farley's negligent and intentional infliction of emotional distress claims. Defendants failed to mention these state claims in their papers and have given no basis for entry of summary judgment on these claims. The fact that some of these causes of action may overlap with elements of the federal claims does not relieve defendants of their duty to properly address these claims. As defendants bear the burden of showing the absence of a genuine issue of material of fact, defendants are not entitled to summary judgment on plaintiff's fourth, fifth, and sixth causes of action. See Celotex, 477 U.S. at 323.

III.   Supplemental Jurisdiction Over State Law Claims

Heretofore, jurisdiction in this court has been appropriate based on federal question jurisdiction over plaintiffs' section 1983 claims and supplemental jurisdiction over plaintiffs' remaining state law claims. See 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1367. Under 28 U.S.C. section 1367, federal courts, unless otherwise provided by statute, "have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A district court may, however, decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1). Neither party has raised jurisdictional grounds for dismissing the present action, however as a matter of federal policy, this court is "duty-bound" to carefully consider whether to exercise discretion over supplemental claims under section 1367(c), and indeed to consider the issue *sua sponte* if necessary. See Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997).

It is well-settled law that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." See Acri, 114 F.3d at 1001 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)). The Ninth Circuit has identified the relevant factors for a determination of discretionary supplemental as judicial economy, convenience, fairness and comity. Acri, 114 F.3d at 1001 (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Gibbs, 383 U.S. at 726.

In the instant case, this court finds that on balance, the values of "judicial economy, convenience, fairness, and comity" weigh in favor of dismissal without prejudice of plaintiffs' state law claims. Plaintiff has presented a diverse set of state law claims which will be more efficiently handled in state court. Reasons of comity also weigh in favor of declining jurisdiction, as the defendants in the present case are all state actors. While discovery is largely completed and summary judgment has been entered on plaintiffs' federal claims, the case remains in the earliest stages of disposition of plaintiffs' state law claims. Inconvenience to the parties of refiling in state court does not outweigh the advantages of dismissal in terms

of judicial economy and comity. Furthermore, as a matter of fairness, this court must take into account the appearance—whether or not it is in fact true—that plaintiffs' alleged federal civil rights violations were superficial masks for at best a run-of-the-mill negligence action more appropriately brought in state court.

Therefore, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and dismisses any state law claims in the first amended complaint without prejudice.

/////

/////

/////

CONCLUSION

For the foregoing reasons, as described herein, defendants' motion for partial summary judgment is GRANTED as to plaintiffs' first, second, and third causes of action, and DENIED as to plaintiffs' fourth, fifth, and sixth causes of action. Plaintiffs' remaining claims arising under state law are DISMISSED without prejudice.

IT IS SO ORDERED.

Dated: May 16, 2005

_/s/_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California